No. 28081

**In the Matter of the Application of Water Rights of Henry C. Hamilton and Kathleen Louise Hamilton in Delta County, Colorado v. The Town of Crawford, The United States of America, and Ralph V. Kelling, Jr., Division Engineer**

(592 P.2d 1327)

Decided April 9, 1979.                                        Rehearing denied April 30, 1979.

Philip Charles Klingsmith, Jr., P.C., for applicant-appellant.

Brown and Brown, A. Allen Brown, for protestant-appellee Town of Crawford.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This is a change of use of water proceeding brought by the appellants Hamilton. The Crawford Mesa Water Association (Mesa) became the successor in interest to the Hamiltons, and Mesa is the real party in interest as applicant-appellant. The Town of Crawford (Town) is the objector and is the only active appellee. The controversy concerns the identity of springs whose water has been decreed. The water judge ruled in favor of

the Town, and Mesa appealed. We affirm in part and reverse in part.

We reverse a finding of fact because there was no evidence to support it. We then direct the result which is mandated by such reversal, and thereby avoid the necessity for a new trial.

This proceeding involves water rights for and in the vicinity of the Town of Crawford, which is in the southeastern portion of Delta County. The elevation of the Town is about 6500 feet. The springs involved are located (as the crow flies) about four miles northeasterly from the Town at an elevation of approximately 7500 feet.

The five springs involved have been know by different names. We refer to them as: The Main Wiley Spring (also called Rock Springs); Hamilton No. 1; Hamilton No. 2; Hamilton No. 3; and Hamilton No. 4. These springs emerge from rock outcroppings. The Main Wiley Spring is the easternmost of the five. Hamilton No. 1 is about 400 feet west of the Main Wiley Spring. The Hamilton Nos. 2, 3 and 4 are west of Hamilton No. 1. A civil engineer and land surveyor testified without contradiction that the farthermost Hamilton Spring (No. 4) was about 600 feet west of Hamilton No. 1. There is a ridge between the Main Wiley Spring and the Hamilton group. As a result water flowing naturally from the Main Wiley Spring goes down one draw and water from the Hamilton Springs proceeds down another.

Of prime importance here are the respective elevations of the springs. The Main Wiley Spring is the highest. Hamilton No. 1 is three to six feet lower than the Main Wiley Spring.[1] Hamilton No. 2 is lower by another nine feet, No. 3 by another three feet, No. 4 by another fourteen feet.

Three ditches are involved:

The Rock Springs Ditch with priority No. 9-A;

The Hamilton Ditch with priority No. K-56;

The West Wiley Spring and Pipeline with priority No. K-185.

The Rock Springs Ditch (9-A) was adjudicated in 1904 with its priority for 2.5 cubic feet of water per second of time (c.f.s.) with a priority date of December 31, 1883. The decree does not specify the location of the source or sources of its water with sufficient definite to be of value here. The water judge relied upon the alleged testimony of one Ulphilas Morrow allegedly given before a referee on August 15, 1901 in a water adjudication in Water District No. 40. The transcript of this testimony appears in the record without further identification. We find nothing to indicate that it was offered, admitted into evidence or commented upon during the

---

[1] The only specific testimony as to elevations in the record was from the surveyor-engineer. His survey showed that the dividing box, in which the Main Wiley Spring water is collected, is 12 to 15 feet lower in elevation than the spring. The elevation of the dividing box is 7500 feet, making the spring around 7512 to 7515 feet. The respective elevations of Hamilton No. 1, No. 2, No. 3 and No. 4 are 7509, 7500, 7497 and 7483 feet.

hearing before the water judge.

The water judge predicated his decision on the Morrow testimony in concluding that the Rock Springs Ditch had first priority on the Main Wiley Spring and all four Hamilton Springs.

Mesa is a non-profit corporation operating for the purpose of selling and delivering water to rural residents in the Crawford area. The Town owns an undivided three-fourths and Mesa and undivided fourth of priority No. 9-A. Their respective portions are divided at the Main Wiley Spring and are conveyed by separate conduits.

In 1951 the Town obtained a decree changing the use of its three-fourths in No. 9-A from irrigation to domestic and municipal.

The Hamiltons owned land in the drainage basin to which the waters from Hamilton Springs naturally flow. On June 16, 1951 they obtained a decree for the Hamilton Ditch with priority No. K-56 for one c.f.s. of water for irrigation purposes with historic appropriation date of January 1, 1930. The decree states that the ditch "derived its supply of water from the spring area tributary to a draw." The legal description of this area is given. The decree further states that "the Hamilton Ditch is a collection ditch for this spring area, which consists of about ten acres . . . ."

The findings of the water judge imply that the source of the Hamilton Ditch water is all of the four Hamilton Springs. The Hamilton Ditch water was decreed for irrigation purposes, being use under the decree between April 15th and October 15th of each year.

Mesa acquired the Hamilton Ditch rights in 1976.

On November 18, 1975 the Town obtained a decree with priority No. K-185 and date of May 12, 1961, to the West Wiley Spring and Pipeline for domestic and municipal purposes in the amount of .38 c.f.s. from Hamilton No. 1. Earlier, in 1965, the Town had commenced use of Hamilton No. 1 water, but was stopped by the water commissioner. It did not attempt to resume this use until about 1975.

The proceedings here are by Mesa and are to change the use of the one c.f.s. decreed to the Hamilton Ditch from irrigation to domestic, and from the irrigation season to a year-around use. The Town objected on the grounds that the Hamilton Ditch's winter use would interfere not only with the winter use of the West Wiley Spring and Pipeline, but with the winter use of the three-fourths of the Rock Springs Ditch (9-A).

The matter was first considered by the water referee of the water division who, in addition to holding a hearing, conducted a number of interviews with the parties and their attorneys and a field inspection at the site of the Springs. The referee ruled as follows:

"IT IS THE RULING OF THE REFEREE that the HAMILTON DITCH Priority No. K-51 is APPROVED AND GRANTED a CONDITIONAL DECREE to change the use of the water decreed under Priority No. K-56, the Hamilton Ditch, from irrigation to domestic, irrigation and

stockwatering on a year-round basis, PROVIDING it is recognized that West Wiley Spring No. 1 has been otherwise decreed for such purposes by the Town of Crawford, and FURTHER PROVIDING that no development work be done to increase the flow which might adversely affect the Wiley Springs Pipeline . . . ."

The water judge conducted a complete hearing *de novo.* Following the hearing he entered his "Finding of Fact." In this he stated:

"That the irrigation season on the ranch is from April 15 to October 15; That the Mesa has diverted and put to beneficial domestic use in 1977 an amount of water measured at 0.10 c.f.s.; That said dates of beneficial use are April 9, 1977, and subsequent thereto . . . ."

\* \* \* \*

"That the Town of Crawford is entitled to 1.875 c.f.s. under priority 9-A and the Crawford Mesa Water Association is entitled to 0.625 c.f.s. under priority 9-A from any, all or any combination of the five springs; That any water not used by the Town of Crawford to fill its 9-A decree may be used by the Mesa to fill the balance of its 9-A decree; That the City is entitled to the next 0.38 c.f.s. from West Wiley [Hamilton No. 1] Spring to fill priority K-185 from October 15 to April 15; That the Mesa is entitled to the next 1.00 c.f.s. to fill priority K-56 from West Wiley Spring and Hamilton No. 2, No. 3 and No. 4 from April 15 to October 15; That in the event there is unused water in Hamilton No. 2, No. 3 and No. 4, then Mesa may use it to fill priority K-56 from October 15 to April 15."

His decree provided that Mesa be granted a change of use from irrigation to municipal and domestic uses,

"for priority K-56 for 0.10 c.f.s. absolute and 0.90 c.f.s. conditional for seasonal use from April 15 to October 15 of each year . . . .
[and]
to use 0.10 c.f.s. absolute and 0.90 c.f.s. conditional from October 15th of each year up to and including April 15th of the succeeding year for municipal and domestic purposes with the date of appropriation as of April 9, 1977 . . . ."

We regard the principal issue as whether taking water by Mesa during the winter months under the Hamilton Ditch decree is in fact taking water decreed to the Town under priority 9-A.

■ In his finding the water judge stated that the Town and Mesa are entitled under priority 9-A to water from "all or any combination of the five springs." To rule against this conclusion, we must find that there was no evidence to sustain it. We so rule.

In the record the only possible evidence which we can find and which might sustain the water judge in this conclusion is the transcript of testimony of Ulphilas Morrow already mentioned. We will assume that the judge found, or there was informally presented to him, this transcript as a part of the proceedings in which the Rock Springs Ditch was adjudicated.

We have not been favored by any citation of authority one way or another as to whether this transcript would be admissible in evidence and, if properly before the court, whether it is relevant and competent. For the purpose of this case, we assume that the court properly took judicial notice of it and, in reaching its decision, could consider it for whatever it might be worth. With this assumption, we rule that it is not worth anything as support for the court's ruling.

Counsel for the Town stated in his brief, repeating it in oral argument: "All of the oldtime witnesses testified in this proceeding that all of the springs involved in this case constituted the source of supply for Priority 9-A." This contention is without support in the record.

It must be borne in mind that the main Wiley Spring is upgrade from the Hamilton Springs. There was testimony that at one time there was a ditch which flowed from east to west, which was below all of these springs and which originated quite a distance to the east thereof. Our reading of the record shows that legend had it that at some time or other there was a ditch at or below all of the springs here involved which flowed from west to east. There was testimony from witnesses who said they had never seen any evidence on the ground of such a ditch. No witness testified that he had knowledge of such a ditch.

Counsel for the Town stated in his brief that Seabron T. King testified that he believed that the development of Hamilton Springs Nos. 2, 3 and 4 would take water from the Main Wiley Spring and Hamilton No. 1. Counsel conceded that the Hamilton Springs were lower than the Main Wiley Spring, but that Mr. King had testified that there had been a "back pressure" on the level of the Hamilton Springs which would force the water underground back to the level of the Main Wiley Spring. This, it was argued, caused use of water from the Hamilton Springs to affect the flow of the Main Wiley Spring. At oral argument, counsel for Mesa challenged this state of the record.

We find that the challenge of Mesa was correct. The following is a transcript of Mr. King's testimony, which counsel for the Town misconstrued as supporting his "back pressure" argument:
"Q Have you made any examination of that whole area to determine the source that as far as you were able of the Wiley Spring and then these four springs?
A Yes. I tromped that whole thing out. I had my divining rods and willow switch both.
Q What did you —
A And while many people don't believe in water witching, I grew up in a country where we had 200 foot wells and we were highly dependent upon water witches. I followed them around when I was a kid and I played with it since then. So I have a very secure feeling that I can feel water. And I tromped that whole hillside out for a quarter of a mile or better to the east

and north as well as out to the west of the spring.

Q Were you able to determine what direction the flow and the depth of the water?

A Yes. I felt pretty well satisfied of the direction and where that water was going there.

Q Will you tell the Court what you found?

A I found that the water was coming into the Wiley or Rock Springs, the main spring, narrows there to about 75 feet in width. And then it goes on west — it comes out, that West Wiley Spring comes out on a sandstone ledge, and as that goes onto the west there, that fans out and comes out on both sides of that ridge. So it's all one source of water, I'm sure.

Q Would you conclude that the development of Springs 2, 3 and 4 would take water from big Wiley Spring?

A It's possible. They are quite a ways farther away, but it's possible they would have some affect on it.

Q And West Wiley Spring itself?

A And West Wiley Spring itself."

We found no testimony in the record concerning "back pressure." We must assume that, if Mr. King was correct that water went underground from the Hamilton Springs to the area of the Main Wiley Spring, it did so in conformity with the law of gravity. This underground flowage, therefore, would emerge to the surface below, and not affecting, the Main Wiley Spring.

The Town had and has a three-quarters interest in priority 9-A. It is incongruous for the Town to have made its appropriation and expended considerable funds in connection with its West Wiley Spring and Pipeline, No. K-185, and now contend that priority 9-A was decreed to "any, all or any combination of the five springs."

The parties concede that, in change of use under a decree, the holder of a junior decree must not be injured. The Mesa's No. K-56 decree is for irrigation during the irrigation season. We affirm the water judge's decision that to enlarge the use of that decree, insofar as water is taken thereunder from Hamilton No. 1 during the period of October 15th to the following April 15th would injure the rights of the Town under its junior decree, K-185. In respect to Hamilton No. 1, Mesa must bow to the winter rights of the Town under K-185.

We reverse the water judge's decision that Mesa must also bow to the rights of the Town under priority 9-A. As already indicated, under the facts in the record we hold as a matter of law that use of water from the Hamilton Springs does not affect priority 9-A taking its water from the Main Wiley Spring.

Mesa's Hamilton Ditch (K-56) by decree takes water from any and all of the Hamilton Springs. Under the record, it is the only claimant to water from Hamilton Nos. 2, 3 and 4. The water judge ordered the change

of use from irrigation to domestic during the irrigation season to this ditch's water from all four Hamilton Springs with Priority 0.10 c.f.s. absolute and 0.90 c.f.s. conditional. It further ordered such a change of use during the winter season of 0.10 c.f.s. absolute and 0.90 c.f.s. conditional with a priority date of April 9, 1977.

Since we hold that priority 9-A is not affected by the decrees involving the Hamilton ditches and since we hold that Mesa is entitled to all of the flow from Hamilton Nos. 2, 3 and 4, on remand the court decree should be changed to provide in effect (with possible appropriate change of names):

That the applicant be granted a change of use from irrigation to municipal and domestic for priority K-56 throughout each year for 0.10 c.f.s. absolute and 0.90 c.f.s. conditional; provided that the foregoing shall not apply to waters flowing from the Hamilton No. 1 Spring from October 15 to April 15 of each year; and that the applicant is awarded the right as to waters flowing from Hamilton No. 1 Spring to use 0.10 c.f.s. absolute and 0.90 c.f.s. conditional from October 15th of each year up to and including April 15th of the succeeding year for municipal and domestic purposes with the date of appropriation as of April 9, 1977.

The parties presented to the water judge and to us a number of other issues, particularly that of abandonment by the Town. We agree with the judge that abandonment was not properly before him. In the light of our decision, we do not reach the other arguments.

We wish to note specifically that no issue has been presented to us as to the portion of the court's finding that "any water not used by the Town of Crawford to fill its 9-A decree may be used by the Mesa to fill the balance of its 9-A decree." The matter is not before us. We expressly state that we neither agree nor disagree with the finding.

Judgment affirmed in part and reversed in part, and cause remanded with directions to change the decree consonant with the provisions of this opinion.

MR. JUSTICE ERICKSON and MR. JUSTICE CARRIGAN concur in the result.